UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DELWIN MARRERO,

    Plaintiff,

v.                                                      Case No. 6:19-cv-1728-RBD-GJK

DISNEY DESTINATIONS, LLC,

    Defendant.

## ORDER

Defendant Disney Destinations, LLC ("Disney") moves for summary judgment. (Doc. 28 ("Motion").) Plaintiff Delwin Marrero responded and Disney replied. (Docs. 33, 34.) On review, the Motion is granted in part.

## BACKGROUND[1]

Marrero worked for Disney as a Spanish Language Reservation Sales Agent from July 2014 to July 2018. (Doc. 28-1, pp. 36:13–20, 51:10–15; Doc. 33-1, ¶ 5.)

Marrero got along with his supervisors at Disney, until Daniel Fonseca came along. (*See* Doc. 28-1, pp. 64:20–25, 66:4–24.) Fonseca put a lot of pressure on the sales team. (*Id.* at 60:23–61:2, 71:9–17.) He did not get along with multiple employees. (*See* Doc. 33-2, pp. 23:18–24:16). But Fonseca gave Marrero a

---

[1] The facts recited here may not be the "actual" facts of the case but reflect Marrero's best case as the nonmoving party. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

-1-

particularly hard time, giving Marrero warnings for things everyone else was doing, such as using the internet while working. (Doc. 28-1, p. 72:1–24.) Fonseca also pressured Marrero about medical leave. (*See* Doc. 33-1, ¶ 11.)

Marrero suffers from several health conditions, including knee arthritis, high blood pressure, Type 2 diabetes, high cholesterol, gout, and sleep apnea (*Id.* ¶ 6.) So he required regular medical leave to attend to these conditions, which he took almost every week. (*Id.* ¶ 7; Doc. 28-1, p. 86:17–20.) Marrero was approved for intermittent leave under the Family and Medical Leave Act ("FMLA") from December 2017 to December 2018. (Doc. 28-1, pp. 120–21.) This allowed him to take leave when he was not feeling well without further approval. (*Id.* at 113:15–114:19; Doc. 28-2, ¶ 5.) But when Marrero was not feeling well and told Fonseca, Fonseca would tell him not to use leave because it would affect his sales numbers. (Doc. 28-1, pp. 88:25–89:7, 95:13–21, 153:7–9, 154:16–19; Doc. 33-1, ¶¶ 11, 12.) These comments discouraged Marerro from using his leave. (Doc. 28-1, p. 88:10–17; Doc. 33-1, ¶ 12.)

Meanwhile, Disney was tracking Marrero's call performance, as it does for all sales agents. (Doc. 28-2, ¶ 7.) In early 2018, Marrero's "release rate"—the number of guests transferred to a survey after a call—was lower than average, so Quality Assurance ("QA") began monitoring his calls. (*Id.* ¶¶ 7, 8, 10; Doc. 28-3, p. 3.) QA monitors without input from management and without information on an

employee's FMLA status. (Doc. 28-2, ¶ 9.) QA identified ten reservation calls over a five-week period that Marrero should have handled himself but transferred. (Doc. 28-1, p. 143; Doc. 28-2, ¶¶ 10–11; Doc. 28-3, p. 3.) Fonseca and Mayte Medina interviewed Marrero about this issue. (Doc. 28-2, ¶ 12; Doc. 28-4.) Marrero responded these types of calls did not produce results and he focused on sales calls, at leadership's direction. (Doc. 28-1, pp. 182:2–184:9; Doc. 28-4.)

QA then initiated a follow up investigation into Marrero's calls. (Doc. 28-2, ¶ 13; Doc. 28-5.) This time, QA identified four calls in a three-day period that Marrero transferred but should have handled himself. (Doc. 28-2, ¶ 13; Doc. 28-5, p. 3.) QA determined Marrero had engaged in call manipulation and call avoidance, which violated Disney policy, so QA recommended termination. (Doc. 28-2, ¶ 14.)

Marrero took approved FMLA leave from May 31, 2018 to July 2, 2018 for bariatric surgery. (Doc. 28-1, pp. 116:10–117:11; Doc. 33-1, ¶ 19.) When he returned, David Camejo, the night shift supervisor, told Marrero he was terminated—claiming it was because of "numbers." (Doc. 28-1, pp. 122:16–17, 217:23–218:12; Doc. 33-1, ¶ 20.)

So Marerro sued Disney, alleging Disney terminated him for taking medical leave and interfered with his rights under the FMLA. (Doc. 1.) Now Disney moves for summary judgment. (Doc. 28.) With briefing complete (Docs. 33, 34), the matter

is ripe.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), so that "when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's *version*," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005).

## ANALYSIS

The FMLA created two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act . . . and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act . . . ." *Strickland v. Water Works & Sewer Bd. of City of*

-4-

*Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001). Marrero brings both claims and Disney moves for summary judgment on both. (Doc. 1, ¶¶ 29–41; Doc. 28.)

### I. Interference (Count I)

"To prove FMLA interference, an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1266–67 (11th Cir. 2008). And he must have been "prejudiced by the FMLA violation in some way." *Diamond v. Hospice of Fla. Keys, Inc.*, 677 F. App'x 586, 592 (11th Cir. 2017).

First, Disney argues Marrero cannot show he was denied a benefit he was entitled to under the FMLA. (Doc. 28, pp. 11–13.) FMLA benefits include "taking leave," and unlawful interference includes "discouraging an employee from using such leave." *Diamond*, 677 F. App'x at 592 (cleaned up). Marrero says Fonseca repeatedly told him not to take his FMLA leave because his numbers would suffer. (Doc. 28-1, pp. 88:25–89:7, 95:13–21, 153:7–9, 154:16–19; Doc. 33-1, ¶¶ 11, 12.) So Marrero has produced sufficient evidence for a reasonable jury to conclude he was denied an FMLA benefit *See Diamond*, 677 F. App'x at 593; *Nardella v. Atl. TNG, LLC*, No. 8:19-cv-1152, 2020 WL 2331179, at *8–9 (M.D. Fla. May 11, 2020).

Second, Disney argues Marrero cannot establish he was prejudiced. (Doc. 28, pp. 13–15.) Here, Disney finds its winning argument. Marrero must "demonstrate some harm remediable by either damages or equitable relief"

because of the FMLA interference. *Diamond*, 677 F. App'x at 592 (cleaned up). But Marrero articulates no damages he suffered because of the interference, such as increased medical expenses or other incidental costs. *See Conage v. Web.com Grp., Inc.*, No. 3:19-cv-87, 2020 WL 7385326, at *6 (M.D. Fla. Dec. 16, 2020); *cf. Diamond*, 677 F. App'x at 594. And Marrero admits he did not need Fonseca's approval to take leave as it was already approved—and he took leave. (Doc 28-1, pp. 106:20–23, 114:2–9, 114:21–115:1; *see also* Doc. 28-1, pp. 164–71); *see Hogancamp v. Cnty. of Volusia*, No. 6:18-cv-600, 2019 WL 11288567, at *6 (M.D. Fla. Apr. 1, 2019). Marrero provides no evidence of prejudice from the FMLA interference, so summary judgment is warranted in Disney's favor on Count I. *See Conage*, 2020 WL 7385326, at *6; *Hogancamp*, 2019 WL 11288567, at *6–7.

## II. Retaliation

Turning to Marrero's FMLA retaliation claim, the Court uses the *McDonnell Douglas* burden shifting framework. *See Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, the plaintiff must establish a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. If he does so, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employer's actions. *Id.* If it does so, then the plaintiff must show the reason is pretext. *Id.* at 804–05.

For Marrero's prima facie case of retaliation, he must show "he engaged in

statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action." *Smith*, 273 F.3d at 1314. There is no dispute Marrero took FMLA leave (statutorily protected conduct) from May 31, 2018 to July 2, 2018 and was terminated (an adverse action) the day he returned. (*See* Doc. 28, p. 16; Doc. 33, p. 17; *see also* Doc. 33-1, ¶¶ 19–21.) But Disney argues Marrero cannot establish causation. (*See* Doc. 28, pp. 15–17.) The Court disagrees.

Marrero was terminated the same day he returned from medical leave.[2] (Doc. 33-1, ¶ 20.) This close temporal proximity is sufficient to satisfy the causation element of Marrero's prima facie case. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Disney argues temporal proximity is not enough here because "the recommendation to terminate came from a separate department whose members had no knowledge of Marrero's FMLA status." (Doc. 28, p. 16.) Temporal proximity is insufficient "to establish a causal connection when there is unrebutted evidence that the *decision maker* was not aware of the protected activity." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (emphasis added). QA "recommended" termination. (Doc. 28-2, ¶ 14.) But recommended to

---

[2] "[T]emporal proximity, for the purpose of establishing the causation prong of prima facie case of FMLA retaliation, should be measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1272 (11th Cir. 2017).

whom? And who made the decision to terminate? The record is silent on this critical point. Absent evidence the decision maker was unaware of Marrero's FMLA status, temporal proximity is sufficient to establish causation. *See Diamond*, 677 F. App'x at 595; *cf. Krutzig*, 602 F.3d at 1235.

Disney also argues Marrero cannot establish pretext. (Doc. 28, pp. 18–19.) But it skips a step. Disney must first rebut Marrero's prima facie case by articulating a nonretaliatory reason for terminating Marrero. *See McDonnell Douglas*, 411 U.S. at 802. While "this burden is not onerous, neither is it a mere formality." *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998) (cleaned up). "The defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision . . . ." *Id.* Rather, the defendant "must clearly set forth, through the introduction of admissible evidence, the reason for its adverse employment decision . . . ." *Id.* (cleaned up).

Here, Disney not only fails to say who terminated Marrero, but also why. (*See* Doc. 28-2, ¶¶ 14–16.) Disney's Director of Sales & Services says: (1) QA recommended Marrero's termination; (2) Fonseca was not involved in the recommendation or ultimate decision to terminate Marrero; and (3) Marrero's termination had nothing to do with his use of FMLA leave. (*Id.*) But these vague assertions fail to "clearly set forth" the reason for Marrero's termination. *See Walker*, 158 F.3d at 1184 (cleaned up). Was it per QA's recommendation? (*See* Doc.

-8-

28-2, ¶ 14.) Was it because of Marrero's numbers? (*See* Doc. 28-1, pp. 217:23–218:12.) Disney does not say. So Disney has failed to meet its burden to articulate a legitimate reason for Marrero's termination. *See Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. v. Firestone*, 893 F.2d 1189, 1193–94 (11th Cir. 1990); *Hollingshead v. Windley*, No. 07-0599, 2008 WL 4809221, at *11 (S.D. Ala. Oct. 31, 2008). The burden does not shift to Marrero to present evidence of pretext and summary judgment is not warranted on his retaliation claim. *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061–62 (11th Cir. 1994).

### III.   Damages

Finally, Disney contends it is entitled to summary judgment on damages, making two seemingly contradictory arguments: (1) Marrero failed to mitigate his damages; and (2) through subsequent employment, Marrero earned enough to offset his lost earning with Disney. (Doc. 28, pp. 19–21.) Neither wins the day.

"In FMLA cases, as in other employment discrimination cases, a plaintiff has a duty to reasonably mitigate damages." *Knox v. Cessna Aircraft Co.*, No. 4:05-CV-131, 2007 WL 2874228, at *11 (M.D. Ga. Sept. 26, 2007). This duty includes using "reasonable diligence in seeking comparable employment." *Id.* "The failure to mitigate one's damage is an affirmative defense, and as such, the [defendant bears] the burden of demonstrating at trial that the plaintiff did not seek comparable employment following his termination." *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d

1340, 1347 (11th Cir. 2000).

Following his termination from Disney, Marrero worked for Universal Studios and another company, but he quit both and started his own business. (Doc. 28-1, pp. 32:22–34:5, 265:15–266:4, 266:19–22.) Quitting comparable interim employment can constitute a failure to exercise reasonable diligence in the mitigation of damages. *See Reiner v. Family Ford, Inc.*, 146 F. Supp. 2d 1279, 1288 (M.D. Fla. 2001). Disney argues Marrero was employed in comparable work with Universal Studios and quit, so he failed to mitigate his damages. (Doc. 28, pp. 19–20.) But Disney has not established Marrero's employment with Universal Studios was comparable work. (*See* Doc. 28, p. 19.) Marrero testified he was making less money at Universal Studios and did not have benefits. (Doc. 28-1, pp. 33:5–11, 35:7–18); *cf. Reiner*, 146 F. Supp. 2d at 1287–88. Marrero did not have to remain in a noncomparable position to mitigate his damages. *See Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988). So Disney has not shown it is entitled to summary judgment on damages based on failure to mitigate.

Disney also argues Marrero's back pay is completely offset by the money he made with his own business after termination. (Doc. 28, pp. 20–21.) If Marrero prevails at trial, he may recover "net lost wages and benefits" from his termination to the date of verdict. Eleventh Circuit Civil Pattern Jury Instruction 4.15, Family and Medical Leave Act—Retaliation Claims—29 U.S.C. §§ 2601–2654 (2020); *see*

*also Wai v. Fed. Express Corp.*, 461 F. App'x 876, 885 (11th Cir. 2012).

At Disney, Marrero made $13 an hour plus commission. (Doc. 28-1, p. 35:11–18.) He also received benefits, including medical insurance, 401(k), and Disney tickets. (*Id.* at 225:23–226:1.) Marrero was terminated on July 2, 2018. (*Id.* at 217:18–218:1.) After, he worked at a lower hourly wage with no benefits for about five weeks. (*Id.* at 33:1–13, 265:15–266:10.) He was unemployed for about three months in 2018, before he started his own business. (*Id.* at 24:9–14, 268:5–17.) Through his business, he made $2,000 in 2018, $100,000 in 2019, and $100,000 in 2020. (*Id.* at 25:10–21.)

Disney argues any lost income from Disney has been offset by Marrero's earnings from his business. (Doc. 28, pp. 20–21.) But Marrero's FMLA damages are not so simple. Rather, "[d]amages are settled and complete and the backpay period ends, when the plaintiff begins earning more at his new job than he did at the job from which he was discharged." *Stephens v. C.I.T. Grp./Equip. Fin., Inc.*, 955 F.2d 1023, 1029 (5th Cir. 1992) (cleaned up). While Marrero eventually did make more with his business than at Disney, there was a period of time before when he was making less money with no benefits or was unemployed. (Doc. 28-1, pp. 25:10–21, 33:1–13, 35:11–18, 265:15–266:10, 268:5–17.) So there is sufficient evidence for the jury to find Marrero is entitled to backpay and Disney is not entitled to summary judgment on damages. *See Mock v. Bell Helicopter Textron, Inc.*, No. 6:04-cv-1415-

Orl-28DAB, 2007 WL 2774230, at *4–5 (M.D. Fla. Sept. 24, 2007).

## CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED IN PART AND DENIED IN PART**:

    a. The Motion is **GRANTED** as to Count I of Plaintiff's Complaint (Doc. 1, ¶¶ 29–34);

    b. In all other respects, the Motion is **DENIED**.

2. The case will proceed to trial on Count II of Plaintiff's Complaint (Doc. 1, ¶¶ 35–41).

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 8, 2021.

_____
ROY B. DALTON JR.
United States District Judge